May it please the Court, I'm Victor Haltom, Appellate Counsel for Jerry King. Mr. King, in this case, was convicted of two offenses, a drug possession offense and a gun possession offense. With respect to both of those offenses, his trial attorney's ineffectiveness resulted in the withdrawal of potentially meritorious defenses. As to the drug possession offense, his lawyer failed to take the necessary steps to present third-party culpability evidence, a confession by another man, a man named James Schlarp. As to the gun charge, trial counsel failed to request what is known as a majoress, M-I-J-A-E-R-S, after a California Supreme Court case, temporary or momentary transitory possession defense to that charge. With respect to the drug charge and trial counsel's ineffectiveness, what happened was a witness was on the stand named Lee Sims. Trial counsel, who's very experienced and unfortunately now deceased, Kevin Climo, was getting ready to ask the witness about this other person's confession. There was an objection, and then the jury is excused, and counsel proffers, this is what this witness would say. Lee Sims would say, James Schlarp admitted possessing all the drugs that Mr. King got busted with, is the quote. The trial court says, well, that would be a declaration against interest if you can satisfy me foundationally that the witness that made this declaration is unavailable. We have in the record a declaration from an associate of trial counsel's, a man named Brian Davis, who is now an attorney, that says he repeatedly tried to serve a subpoena on this individual, James Schlarp. However, he did not ever succeed in getting that subpoena served. That, it seems, would have satisfied the diligence and unavailability requirement. The foundation of the case. We really need to get to this issue. The second prong of the requirement that you have to be successful requires there to be some prejudice that would have changed the case. In this instance, what the proposal is, is to prove ownership. But he wasn't convicted of ownership. He was convicted of possession. And I don't see how this particular issue is going to be germane to the possession count. What's your response to that? Well, Your Honor, the confession would have been by a man that's saying there's an aggregate of all different kinds of drugs. I think it's a total of about 29.9 grams of Valium, of amphetamine, methamphetamine. This man, James Schlarp, who owned the residence, was saying that was all my stuff, all of it. Your Honor, yeah, he was going to say I owned the stuff. But ownership is not the issue that we have before us. It was possession. Right. He was convicted of possession. The ownership is immaterial. It's the possession that he was charged with. So where does this get us as far as being, showing the prejudice necessary under our law? Well, I think if the court's driving at the fact that Mr. King had admitted to arresting officers that he had used methamphetamine earlier in the evening, which he did, that is not what he was charged with. He wasn't charged with being under the influence or use. And he wasn't charged with possessing the meth that was already in his system, admittedly. He was charged with possessing meth that was littered about this detached garage, which he came out of with a companion right before his arrest. And the – I understand the distinction between ownership and possession, but if you have a witness that's going to say that was all my stuff and Mr. King is simply in a proximate location to it, I don't think that that is the case. Wait a minute. That isn't – was that the proffer? I thought the proffer was only that was my stuff. That is, I own it. Right. The second part that you just mentioned, that wasn't part of what he was going to say. That wasn't in the proffer. The extent of the proffer in the record was I've got a witness who's willing to say all the stuff that Mr. King got busted with is my stuff. Yeah. Okay. But the evidence in the record does show what I just said, that he came out of this detached garage and that police searched the detached garage and that there was drugs all in various locations throughout that detached garage. What about the shaving kit? The shaving kit he told police was his. In that shaving kit were multiple Ziploc baggies, two vials. The two vials contained an aggregate of, I believe, 5.9 or 5.7 grams of methamphetamine and a couple syringes. Now, the jury had multiple charges in this case. He was charged with possession with intent to sell. The jury acquitted him of possession with intent to sell. If the jury thought that that stuff in the shaving kit was his, it would seem as though they would have convicted him of possession with intent to sell. Not necessarily. Why else do you have multiple baggies? And plus, one big one. How does that get you? In terms of prejudice, though, to focus back on the Strickland prejudice prong, he admits he owns a shaving kit. The shaving kit contains the drugs. Why isn't that enough to convict him of possession? Well, for the reason that I just explained, we don't know what the jury convicted him of. In terms of ‑‑ I should have been clear with my question. In terms of this third person, I mean, your defense is or your argument is this third person really owned the drugs and, therefore, it was ineffective assistance of counsel not to put on evidence of that. But if he says he owned the drugs that were in his shaving kit, how do you get over the prejudice? He didn't say he owned the drugs in the shaving kit. He said the only drugs he was aware of in that detached garage was some marijuana in a drawer. He didn't say it was his. He just said he was aware that it was there. He said that he comes and goes from this place. So the owner of the residence who was there and found in possession of multiple different types of drugs could have easily put those drugs there in a shaving kit that was Mr. King's and, in fact, said that it was his. So I think that the jury should certainly have been allowed to pass on the question of whose drugs were those with the benefit of that man's confession. Your Honors, as to the gun charge, we have the recognized defense in California of momentary or transitory possession. And here the only evidence that Mr. King was in possession of the gun that he was convicted of being in possession of was the fact that the gun was found under a mattress in this detached garage. And when police ---- Wrapped in a towel. Wrapped in a bandana or handkerchief, I believe it was. And he had moved it from the drawer where he found it. He told police that, yes, he had moved it from a drawer. He had come across it in a drawer and moved it from the drawer to underneath the mattress. And that was moved for the purpose of disposing of it? We don't know. And that's the whole problem here, is the jury never was allowed to, with the benefit of this instruction, which counsel thought he had requested, he executes a declaration, which is in the excerpts of record, saying, I argued this defense, temporary possession. He said he made a mistake. He agreed he should have put in the instruction. But I think the point is, what difference would it make if he's actually taken it out of the drawer and wraps it up and sticks it in the mattress? That doesn't sound very temporary. I mean, he didn't get rid of it. Well, you can be acquitted on this defense if a jury finds that it was momentary possession. I don't know how it doesn't take long to grab a gun out of the drawer, wrap it, put it under a mattress. And why would he be doing that? He's a con, or an ex-convict. He knows he's not supposed to be around a gun. He's got a female guest there. Maybe he doesn't want her to see the gun. He puts it under the bed. Is that momentary possession? Is that – it doesn't have to be intention to simply abandon it. It can be – and this gun was not his. It's registered to the homeowner. Right. But the district court found it was significant that your client didn't seek to abandon it at all. I agree with that. The district court said two things. The district court said that, well, it appears that he was trying to move it closer to him. And I don't really get that because we don't know where he was. We don't even know that he necessarily slept in that bed. He came and went from that apartment. There's, to my knowledge, no evidence in the record of the distance between the drawer and the bed. The district court also – so I don't see how that really defeats a momentary or transitory possession defense that it was simply moved to a place that the district court deemed to be closer to. I think the district court said it appeared that he moved it closer to himself for protection. At least the evidence would indicate that. And, two, there's no evidence in the record that he ever attempted to abandon it, disowned it, or once he acquired the temporary possession elected to abandon the possession. Right. And I've set forth – I agree with you, Your Honor. That's what the district judge said. At pages 28 through 29 of my brief, I set forth the current California CalCrim jury instruction, which is set forth in disjunctive language saying what you need to show to make this defense out. And one of the showings is momentary possession. Right. And I gather – I'm sorry to interrupt you, but one quick question because your time is getting down. I gather that the California courts of appeal are divided on the question of whether the Meharry's instruction applies to felon and possession charges. They are. There's the Hurtado case and the Pepper case, and the district court and the magistrate judge in a footnote outlined that division. And the state court and the district court got this clearly wrong in characterizing the California Supreme Court's discussion of this issue in a case called Martin. The California Supreme Court in Martin, which is 25 Cal 4th at page 1191, says we agree with the Hurtado court that recognition of a momentary possession defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms. So even though that case, Martin, was a drug case, and the district court says so obviously that discussion is dicta, that's the California Supreme Court saying it agrees with Hurtado. And anyway, counsel admitted he should have gotten this request in the record. He argued it to the jury. He even argued it on appeal. And then the AG pointed out, well, you can't argue this on appeal because you didn't request it. So it seems pretty clearly ineffective. Then the question, as I think you all have honed in on, is the one of prejudice. And to say that, well, he moved it closer to him, that's entirely speculative. And the question is if you look at that formulation of what it takes to meet this defense. Weren't he and his female companion undressed when the police caught him? They were. That does sound like then moving it to the bed would move it closer to him, doesn't it? That's a rational inference. They probably were in the bed, but who knows. We can only speculate about that. If you take away the felon in possession charges, how much difference does it make on the sentence? The felon in possession charge was stayed, Your Honor. It was stayed under Penal Code Section 654. And the sentence that was run, 25 to life, was for the drug charge. Right. So as a practical matter, it doesn't make a whole lot of difference, does it, to your client on the felon in possession? Well, if this court – no, I need reversals on both. I believe that that's the case. I'm not sure what exactly happens. You have to win on both for it to make a substantial difference to your client. But there might be some – The sentence wasn't run concurrent. It was stayed under 654, which might have a different – I didn't look into that. It could have a different application on remand. So if I were to win – I just kind of want to know practically how you view it as playing out. I think I need to win both. Okay. We'll give you a couple minutes for rebuttal. Thank you. Excuse me, Your Honor. My voice is coming and going today. May it please the Court. Justin Riley on behalf of the warden. I'd like to initially point out something King brought up in his reply brief, having to do with proportionality analysis with the sentence. California, in analyzing a cruel or unusual punishment argument under the California Constitution, appears to analyze a sentence as its maximum possible effect. That is only with regard to California constitutional claims and does not bind the federal court in any event. Isn't this issue governed by Taylor v. Lewis? I believe it is. I cited to it extensively. I don't think it's materially distinguishable from Taylor v. Lewis at all. Well, that was my tentative view. I know counsel didn't argue this issue. And I assume that was the reason why. Well, I argued oily here. I think so, too. Why don't you focus on the other issues that were argued here? Because I think we have both parties' arguments at hand on proportionality. What about the gun charge? I mean, it's pretty clear that counsel should have sought an instruction on it. He intended to. He argued it. There was some evidence to support the instruction. It has some basis in California law. It has some basis in California law. But the Pepper case, which is actually from the district in which Mr. Climo was practicing, came down in favor of not having the instruction apply. We had a declaration from Mr. Climo that said, no, I probably should have looked at the instruction or it was an oversight or something like that. But obviously in the district, when we look at it, we look at whether his decision was objectively reasonable. What was the downside of asking for the instruction? The downside was that there was a California appellate court decision in his district that said it doesn't apply. No, I mean that there was no strategic reason not to ask for it. Other than hearing no by the trial court. Exactly. I see where you're going. If you don't ask for it, you already have no front answer. I think under that logic we would be requiring trial counsel to do just a plethora of things. No, but this wasn't an absurd request. It was a request that was based on the record, founded on California law. He had a case in the district, his district, against him. But there's no strategic reason not to ask for it. That transition? I'm sorry. Because then, of course, you can always challenge it on appeal and go to the California Supreme Court and hope to get a different result. Looking back, there are a lot of things that the trial counsel can do. That transitions me into my next argument, and that's prejudice. Here we don't have any transitory possession. As the district court and the state courts found, Mr. King took it from a place that was further away from him and stuck it under a bed in a place where he was staying. Presumably, he's sleeping on the bed in the room in which he's staying. I don't want to jump to any conclusions, but that does suggest that he is exerting more possession and more control over a weapon that was not his. Under California law, who has the burden of proof on this issue? Who? Does the defendant have to prove that it was temporary, or does the State have to prove that it was not temporary? I believe this is an inferential instruction. What it would do is tell the jury to use evidence in a certain way. And what the evidence would do is tend to show the jury that one of the elements, possession, had not been proven beyond a reasonable doubt. This is a use instruction? Well, I'm not sure that's the case. I don't believe it's a defense instruction. If this is the State's burden, then you have more of a hill to climb, because you'd have to prove these elements beyond a reasonable doubt. If it's a separate defense, such as insanity, maybe it would be different. So the burden of proof might be important to us in resolving this. Has the California State courts decided who has the burden to prove or disprove? No, mostly because the California Supreme Court hasn't decided whether or not this applies to gun use at all. Leaving aside the gun use question, on the general Maharis instruction, who has the burden of proof? I did not research who has the burden of proof for possession of drugs in regard to this. What you seem to indicate, and I understand you're just talking, you're just responding to our questions early, but you view this as a defeat of an element. In other words, an explanation of the element? I'm just guessing, yes. Yeah, okay. Excuse me. As to the unavailability of the witness, as the district court found and the state court found, Mr. King had the burden of proof at both of those levels, at collateral review in the state courts and on federal habeas review in the district court, to prove several things, that the witness was actually unavailable, what he would say, that he would actually testify, those things, and found that there was insufficient evidence in that regard. Notwithstanding, and I understand counsel's arguments, there just seems to be no prejudice here given his admissions that he was using drugs. There was actually, Your Honors noticed that there was a shaving kit that he admitted to ownership of with a plethora of drugs in. He had also admitted that he was using, just prior to the law enforcement showing up, and there was a spoon laying on a counter, I believe, or a dresser that had a usable amount of methamphetamine still on the spoon. There just would have been no prejudice there, unless there are any other questions. Well, I do have one. There was no evidentiary hearing before the federal courts, right? I'm sorry, there was no evidentiary hearing? Right. That's true. Wouldn't that have assisted everyone in determining whether or not there was sufficient basis to find prejudice or not? Would it have assisted? Yes. In other words, presumably, the defense would have put on the witnesses saying, yes, I tried, I could have proven unavailability, et cetera. I believe that in an abundance of information, good decisions are made. I don't understand the Court's question other than that. Well, part of the problem we have here is that we're dealing with affidavits and we're assessing factual matters. The district court didn't hold an evidentiary hearing. I believe that Mr. King didn't attempt to. Mr. King got declarations from both his trial counsel and his assistant, and noticeably absent was evidence as to this claim, the unavailability of the witness, other than the assistant tried to serve several times. He had the opportunity to do so. The state court put him on notice at the superior court level on collateral review that there was insufficient evidence, and he never tried to present any more evidence than that, even though he got declarations from both trial counsel and the assistant after that time. Any further questions? Okay. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you. Very briefly, just counsel brought up the cruel unusual or cruel and unusual. The court asked about Taylor, whether or not that's controlling. I, in a 28J letter, cited to Judge Bybee's opinion for this court in Gonzales. I mean, Gonzales is a technical 290 case. This case is a pretty technical drug possession case where, if you look at the evolving standards of decency, California no longer even allows imprisonment for a straight dope case under Prop 36. So, and look at the priors of the defendant in Gonzales. He had a child molest and then a separate rape. Mr. King admittedly has. But he was convicted of a crime that the California courts had characterized as merely a technical violation of a reporting requirement. Right. That's a little different from using meth or possessing meth and other drugs. But if the California legislature has said, or the California voters, rather, with Prop 36 have said, we're not going to even allow imprisonment, that seems to, for a straight possession offense, that I think puts the two arguably in an analogous, comparable situation. Counsel mentioned the declaration of my colleague here mentioned the declaration of trial counsel regarding the failure to request an instruction. And in paragraph 14 ER page 65, counsel states in his declaration, I had research in my file regarding the temporary possession instruction. So he was really going after that. He just did not request it. There is, on the element question, or who has the burden of proof, there's a case that I argued before the California Supreme Court called Neidinger, N-E-I-D-I-N-G-E-R, that addresses not the Majoris issue, but California law on, you know, is it the defense's burden of proof for a defense, or is it something that's inherent in an element and therefore the prosecution's burden of proof? I don't have an answer to this specific question, and I believe there is no California case addressing on a Majoris type instruction who has the burden of proof. And then one final point. I think on the drugs and the prejudice here, a real problem here is that there was no unanimity instruction. There's drugs all over the place in the house and in the detached garage. Mr. King is acquitted of four separate counts relating to Valium, amphetamine, as opposed to methamphetamine. We don't know what the jury found, what drugs they said he was in possession of. They could have convicted him of possession based upon the fact that he admitted using earlier in the day. So I think that a finding of the court's indication that maybe an evidentiary hearing would have been appropriate here, that that has some merit. I've been requesting an evidentiary hearing all along. And in terms of my colleagues saying, well, the State habeas court said you didn't put in a declaration from, I guess, Mr. Sims, who is the person who would have said Mr. Schlarp confessed that all the drugs were his, why do I need to put a declaration? And counsel, as an officer of the court, made a proffer to the court saying this is what Mr. Sims will testify to. There was nothing more to do. And with that, I'll submit it unless there's additional questions.  Thank you, counsel. Thank you. The case is heard and will be submitted.
judges: Wallace, Thomas, Bybee